# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NELSON GONZALEZ,

    Plaintiff,

        v.

BUREAU OF ALCOHOL, TOBACCO,
AND FIREARMS, et al.,

    Defendants.

Civil Action No.  04-2281 (JDB)

## MEMORANDUM OPINION

    Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, plaintiff, a federal

inmate proceeding *pro se*, filed FOIA requests to the Executive Office of United States Attorneys

("EOUSA"), the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), the Federal Bureau of

Investigation ("FBI"), the United States Marshals Service ("USMS"), the Criminal Division of the

Department of Justice ("DOJ"), and the Drug Enforcement Administration ("DEA").  The present

action seeks review of these agencies' dispositions of plaintiff's FOIA requests.  Defendants have

filed motions for summary judgment.  Based on the factual record and the applicable law, the

Court will grant defendants' motions.

*Background*

    On May 26, 1999, in the United States District Court for the Western District of Texas,

plaintiff was sentenced to 365 months imprisonment.  Complaint ("Compl."), Attachment,

Judgment.  Plaintiff subsequently filed FOIA requests with a number of federal agencies, seeking

documents related to the criminal investigation that led to his conviction.  Plaintiff seeks the

information in order to challenge his conviction on the ground that the prosecution withheld
exculpatory evidence at his trial.  Compl., ¶¶ 1, 3.

On February 23, 2004, plaintiff sent a FOIA request to DOJ for all records in his name.
Defendants' Motion for Summary Judgment ("Defts.' Mot."), Declaration of Kathy Hsu ("Hsu
Decl."), Exhibit ("Ex.") 1.[1]   DOJ notified plaintiff on February 10, 2005 that the agency had not
located any records responsive to his request.  *Id.*, Ex. 7.  On June 7, 2005, DOJ informed plaintiff
that it had performed an additional search in the Asset Forfeiture and Money Laundering Section.
*Id.*, ¶ 9.  DOJ located a single-page document listing ten seized assets, and requested plaintiff to
identify which assets had previously been owned by him.  *Id.*, ¶ 10.  In response, plaintiff stated
that he was not the individual identified on the asset list and had never had a possessory interest in
any of the assets.  *Id.*, Ex. 9.

On February 18, 2004, plaintiff sent a FOIA request to the USMS.  Defts.' Mot.,
Declaration of William E. Bordley ("Bordley Decl."), Ex. A.  The USMS responded to plaintiff's
FOIA request on March 31, 2004. *Id.*, Ex. C.  The USMS located 47 pages responsive to
plaintiff's request.  *Id.*  Four pages were referred to the DEA for processing, 29 pages were
released to plaintiff in their entirety, 11 pages were released with redactions, and 3 pages were
withheld from disclosure.  *Id.*  The USMS cited FOIA Exemption 7 (C) to justify its decision to
withhold information.  *Id.*   The USMS released an additional one-page document on July 5, 2005.
*Id.*, Ex. G.  Plaintiff appealed the USMS's response to the Office of Information and Privacy
("OIP").  *Id.*, Ex. D. On July 19, 2004, the OIP affirmed the USMS's action.  *Id.*, Ex. F.

---

[1] This motion seeks summary judgment on the disposition of plaintiff's FOIA requests by
ATF, DEA, FBI, USMS, and DOJ.  EOUSA filed a separate motion.

Plaintiff also submitted a FOIA request to the DEA on February 18, 2004 seeking "all criminal investigatory and forfeiture" records "in any way connected to, related to, or even remotely in reference to my name."  Defts.' Mot., Declaration of Adele Odegard ("Odegard Decl."), Ex. A.  On May 23, 2004, the DEA forwarded to plaintiff 52 pages of records and withheld 151 pages pursuant to FOIA Exemptions 2, 7 (C) and 7(D) and a Privacy Act provision, 5 U.S.C. § 552a(j)(2). Odegard Decl., ¶ 6.  On June 8, 2004, the DEA sent plaintiff a supplemental release of 9 pages of documents and withheld 9 pages pursuant to the Exemptions 7 (C),7 (D) and 7(F), and the Privacy Act. *Id.*, Ex. B.   Plaintiff appealed the agency's action to OIP. Compl., Attachment, 7/23/04 Letter of Richard L. Huff.  On July 23, 2004, the OIP affirmed the DEA's action on plaintiff's FOIA request. *Id.*

In conducting the search for records responsive to plaintiff's request, the DEA had only identified records by "title," i.e., where plaintiff was the principal subject of an investigation. Odegard Decl., ¶¶ 11-12.  At plaintiff's request, the DEA conducted a supplemental search for plaintiff's name in "related files," that is, investigative records that made any reference to plaintiff.  *Id.*, ¶ 13 & Ex. C.  As a result of this search, on July 15, 2005, the DEA disclosed to plaintiff 74 pages in their entirety and 76 pages with redactions, and withheld 10 pages.  *Id.*, Ex. D.

On February 18, 2004, plaintiff filed a FOIA request with the ATF for all records of any criminal investigation of plaintiff.  Defts.' Mot., Declaration of Averill P. Graham ("Graham Decl."), Ex. A.  The ATF informed plaintiff that the agency did not possess any records responsive to his request.  *Id.,* Ex. B.  On June 28, 2004, OIP affirmed ATF's decision on appeal. *Id.*, Ex. E.

Plaintiff sent a FOIA request to the FBI on February 18, 2004.  Defts.' Mot., Declaration of Nancy L. Steward ("Steward Decl."), ¶ 5.  Plaintiff sought any and all documents, records and information that the FBI had in its possession that were in any way connected to, related to, or even remotely in reference to him.  *Id.* On August 9, 2004, the FBI sent plaintiff 11 partial pages of records*,* withholding material from the records under FOIA exemptions 7 (C), (D), and (E) and section 552a(j)(2) of the Privacy Act.  *Id.,* ¶ 11.  Plaintiff appealed the FBI's action on August 25, 2004.  *Id.*,  ¶ 12.  OIP has yet to issue a decision on the appeal.

Plaintiff filed a number of FOIA requests with the EOUSA.  With one exception, the EOUSA did not locate any records responsive to the requests.  *See* Defendant EOUSA's Motion for Summary Judgment ("Deft. EOUSA's Mot."), Declaration of David Luczynski ("Luczynski Decl."), ¶ 4.  Plaintiff sought all records pertaining to him in the United States Attorney's Offices located in the states of Texas and Ohio, Rochester, Minnesota, Springfield, Missouri and Oklahoma City, Oklahoma.  *Id.,* Ex. A.   Plaintiff appealed this action to the OIP. *Id.*, Ex. B.  On August 16, 2004, OIP notified plaintiff that his request was being remanded for a search of the United States Attorney's offices in Texas and Ohio.  *Id.*

On June 30, 2005, the EOUSA sent plaintiff notice of its decision on his request.  *Id.*, Ex. F.  The EOUSA stated that it would release 49 pages in full and 9 pages in part, and withhold in their entirety 306 pages.  *Id.*  The EOUSA informed plaintiff that it would disclose the records once he paid a $49.00 search fee. *Id.*  The EOUSA also informed plaintiff that 103 pages had been referred to the Bureau of Prisons ("BOP"), 33 pages to the FBI, 39 pages to the Immigration and Naturalization Service ("INS"), and 113 pages to the DEA.  *Id.*  The EOUSA denied plaintiff's request for a fee waiver.  *Id.*, Ex. G.   Plaintiff did not appeal this determination by the EOUSA.

Luczynski Decl., ¶ 12.

*Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at  255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248.  The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Moreover, "any factual assertions  in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).  The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment.  The

party opposing the motion must show that there is a genuine issue of *material* fact.  *See Anderson*, 477 U.S. at 247-48.  To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party.  *See id.; Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F.Supp. 477, 481 n. 13  (D.D.C. 1980).  In a FOIA case, the court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  Agency affidavits or declarations must be "relatively detailed and non-conclusory."  *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *Id.* (internal citation and quotation omitted).   An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially]  exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)(internal citation and quotation omitted).

*Discussion*

## A.  Adequacy of the Agency Searches

In order to obtain summary judgment on the issue of the adequacy of a search, an agency must show, "viewing the facts in the light most favorable to the requester, that . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA.  *Id*. at 127.  The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  When determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Oglesby*, 920 F.2d at 68.

In processing plaintiff's request, DOJ first searched its centralized records index and found no responsive documents.  Hsu Decl., ¶¶ 12, 13.  DOJ then searched its Privacy Act systems and offices for individuals subject to electronic surveillance, the General Litigation and Advice Section, the Organized Crime and Racketeering Section, foreign agents' registration records, espionage registration records, requests for electronic interceptions, tax files, prisoner transfer records, a listing of displaced persons, the Narcotic and Dangerous Drug Section, and the Asset

Forfeiture and Money Laundering Section.  *Id.*, ¶ 15.   These searches were undertaken by DOJ in the same manner as if it were seeking the information for its own official purposes.  *Id.*

The USMS searched for records at the agency's offices in the judicial districts that were identified in plaintiff's request.  Bordley Decl., ¶ 4.  The agency utilized the Prisoner Processing and Population Management/Prisoner Tracking System and the Warrant Information Network systems of records.  *Id.*, ¶ 5.  The USMS maintains records in these systems in connection with the receipt, processing, transportation and custody of prisoners, the execution of arrest warrants, and the investigation of fugitive cases.  *Id., ¶* 6.

According to the declaration provided by DEA, all documents responsive to plaintiff's FOIA request were likely to be found in the DEA's Investigative Reporting and Filing System (IRFS).  Odegard Decl., ¶ 8.  The IRFS contains all investigative reports files compiled for law enforcement purposes.  *Id.*  The IRFS is accessed through the DEA Narcotics and Dangerous Drug Information System (NADDIS).  *Id.*, ¶ 9. Individuals are indexed and identified in NADDIS by name, social security number, and/or date of birth.  *Id.*, ¶ 10.  In this case, a NADDIS inquiry was conducted in response to plaintiff's request for information about himself.  *Id.*.  The search yielded two files that contained plaintiff's name or otherwise referred to him.  *Id.*, ¶ 13.

The ATF conducted a search for documents responsive to plaintiff's FOIA request in the Treasury Enforcement Communications System ("TECS").  Graham Decl., ¶ 10.  ATF records located within TECS include wanted persons and fugitives, known and suspected violators of firearms laws, felons and dishonorably discharged veterans who have filed for relief from their firearms disabilities, violent felons, gangs, and terrorists.  *Id.*  The TECS system contains seven record subsections: People, Businesses, Aircraft, Firearms, Vehicles, Vessels, and Things.  *Id.*

Since the TECS database also contains the names of individuals ATF has investigated, it was the most likely place to locate records regarding plaintiff. *Id.*

Utilizing the TECS database, ATF searched for documents in several queries using plaintiff's name, date of birth, and social security number. *Id.*, ¶ 11. All of ATF's queries resulted in negative responses. *Id.*, ¶ 11, 12. ATF did not find any documents responsive to plaintiff's request. *Id.*

The FBI searches for records responsive to a FOIA request through the use of the Central Records System ("CRS"). Steward Decl., ¶ 14. The records maintained in CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. *Id.* The system is a numerical sequence of files broken down according to subject matter, which includes an individual's name. *Id.* Certain records in this system are maintained at FBI Headquarters, and records pertinent to specific field offices are maintained at those sites. *Id.*, ¶ 15.

In this case, the FBI searched the CRS indices for the records in the eleven field offices that were identified in plaintiff's request. *Id.*, ¶ 20. As a result of these searches, the FBI located one main file regarding plaintiff. *Id.* The FBI released documents in this file either in whole or part. *Id.*

Plaintiff's FOIA request filed with EOUSA sought disclosure of documents from a number of United States Attorney's Offices. *See* Luczynski Decl., ¶ 5. The EOUSA notified plaintiff that one of the offices, the Western District of Texas, had found over 2550 pages responsive to his request. *Id.*, ¶ 8. After plaintiff narrowed his request because of the amount of search time involved in processing his request, the EOUSA informed plaintiff that it would not disclose the

records until plaintiff paid a search fee.  *Id.*, ¶ 10.  Plaintiff did not appeal this determination or pay the fee.  *Id.*

It is apparent from the  declarations submitted by the agency representatives that defendants have made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested."  *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996)(citing *Oglesby*, 920 F.2d at 68).   No more is required. Therefore, defendants' searches for plaintiff's requested records were adequate to fulfill defendants' obligations under the FOIA.[2]

## B. Exhaustion of Administrative Remedies

The EOUSA moves for summary judgment on the grounds that plaintiff has failed to exhaust his administrative remedies.  A party must exhaust the available administrative remedies under FOIA prior to seeking relief in federal court.  *Oglesby*, 920 F.2d at 61-62; *Nurse v. Sec'y of Air Force*, 231 F.Supp.2d 323, 327 (D.D.C. 2002).  FOIA's exhaustion requirement, however, is not jurisdictional.  *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).   Failure to exhaust only precludes judicial review if "the purposes of exhaustion" and the "particular administrative scheme" support such a bar.  *Id.* at 1258-59 (quoting *Oglesby*, 920 F.2d at 61).   FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review.  *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *Hidalgo*, 344 F.3d at 1259.

Defendants contend plaintiff has not complied with the exhaustion requirement because he has not provided a payment for processing his records.  Generally, requestors must pay reasonable charges associated with processing their FOIA requests.  *See Judicial Watch, Inc. v. Rossotti*, 326

---

[2] Plaintiff has not challenged the adequacy of any of the agencies' searches.

F.2d 1309, 1310 (D.C. Cir. 2003); *see also* 5 U.S.C. § 552(a).   Agencies, however, are required to

waive fees if a requestor demonstrates that "disclosure of the information is in the public interest."

5 U.S.C. § 552(a)(4)(A)(iii).   Failure to pay the requested fees or to appeal the denial from a

refusal to waive fees constitutes a failure to exhaust administrative remedies.  *Oglesby*, 920 F.2d

at 66; *Judicial Watch,* 190 F.Supp.2d at 33.   Moreover, judicial review of an agency's denial of a

fee waiver request cannot be sought until a plaintiff appeals that decision or pays the assessed fee.

*Judicial Watch,* 326 F.3d at 1310; *Trulock v. U.S. Dep't of Justice*, 257 F.Supp.2d 48, 52 (D.D.C.

2003).

Exhaustion of remedies is generally required "so that the agency has an opportunity to

exercise its discretion and expertise on the matter and to make a factual record to support its

decision."  *Oglesby*, 920 F.2d at 61.   The purposes and policies of the exhaustion requirement are

to prevent premature interference with agency processes, to give the parties and the courts the

benefit of the agency's experience and expertise, and to compile an adequate record for review.

*Wilbur*, 355 F.3d at 677; *Hidalgo*, 344 F.3d at 1259.   It is an undisputed fact that plaintiff never

paid the assessed fee in response to the letter from EOUSA or appealed EOUSA's decision not to

grant him a fee waiver.  Due to plaintiff's inaction, the EOUSA has not completed the processing

of plaintiff's FOIA request or made a determination regarding the disclosure of records.  For these

reasons, plaintiff's failure to exhaust precludes judicial review of his FOIA request to the EOUSA.

### C.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and

practices of an agency."  5 U.S.C. § 552(b)(2).   It applies to two categories of material: (1) internal

agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant

public interest;" and (2) internal agency matters of some public interest "where disclosure may

risk circumvention" of statutes or agency regulations.  *Dep't of the Air Force v. Rose*, 425 U.S.

352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d. 1051,

1073-74 (D.C. Cir. 1981).  Generally, courts limit Exemption 2 protection to "trivial

administrative matters of no genuine public interest" ("low 2" exempt information), and to

information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt

information).  *Schiller v. NLRB*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of
the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Under this exemption, the DEA refused to disclose "violator identifiers" called G-DEP

codes and NADDIS numbers.  Odegard Decl., ¶31.  The codes and numbers are part of DEA's

internal system of identifying information, the disclosure of which would help identify the priority

given to particular investigations, the types of criminal activities involved, and violator ratings.

*Id.*, ¶¶ 32, 45-49.   DEA also withheld information provided by a "coded informant."  *Id.*, ¶ 33.

Such codes provide sensitive information about individuals who cooperated with the DEA under a

promise of confidentiality.  *Id.*  Courts have found that there is no significant public interest in the

disclosure of such identifying information.  *See Lesar v. United States Dep't of Justice*, 636 F.2d

472, 485-86 (D.C. Cir. 1980); *Coleman v. FBI*, 13 F.Supp.2d 75, 79 (D.D.C. 1998); *Manna v.
United States Dep't of Justice*, 832 F.Supp. 866, 872 (D.N.J. 1993); *Watson v. United States Dep't
of Justice*, 799 F.Supp. 193, 195 (D.D.C. 1992).   The same holds true here.  Since there is no

apparent public interest in the information, the DEA's interest in maintaining the integrity of its

informant program outweighs any personal benefit to plaintiff.

This rationale applies equally to the withholding of records by the FBI.  The agency

-12-

withheld the permanent source symbol numbers of confidential informants who provide

information to the FBI on a regular basis under an express promise of confidentiality.  Stewart

Decl., ¶ 28.  Release of these numbers would enable an individual to know the scope and location

of FBI informant coverage within a specific geographical area.  *Id.*, ¶ 29.  Therefore, this

information is legitimately withheld under Exemption 2.  *See Delta Ltd. v. U.S. Customs and

Border Protection Bureau*, 384 F.Supp. 2d 138, 147 (D.D.C. 2005); *Piper v. U.S. Dep't of Justice*,

374 F.Supp. 2d 73, 80-81 (D.D.C. 2005).

The Court finds that there is not a public interest sufficient to override the DEA and FBI's

appropriate interest in maintaining the confidentiality of their internal procedures.   Therefore, the

information was properly withheld from plaintiff under Exemption 2.

### D. Exemption 6

The FBI relies on FOIA Exemption 6 to justify its redactions of the names of FBI

agents, professional support personnel, a non-FBI federal employee, state and local law

enforcement personnel, and third parties of investigative interest to the FBI. Steward Decl.,

¶ ¶ 32-36.  This exemption concerns the privacy interests of third parties and requires the

Court to balance their privacy interests against the public interest in disclosure.  *See National

Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *United States Dep' t of

Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773-75 (1989).

Exemption 6 prohibits the release of " personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of privacy." *See* 5 U.S.C.

§ 552(b)(6).  This exemption protects from disclosure all information that " applies to a

particular individual" in the absence of a public interest in disclosure. *United States Dep' t of*

*State v. Washington Post Co.*, 456 U.S. 595, 602 (1980). Courts have broadly interpreted the term " similar files" to include most information applying to a particular individual. *Kidd v. United States Dep' t of Justice*, 362 F.Supp. 2d 291, 296 (D.D.C. 2005).

The privacy interests identified by the FBI are clear. Plaintiff has offered no public interest to counterbalance these privacy considerations. Therefore, the FBI' s redactions on Exemption 6 grounds were proper.

### E. Exemption 7(C)

Exemption 7(C) of the FOIA protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of the individual mentioned in the record against the public's interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). It is the "interest of the general public, and not that of the private litigant" that the court considers in this analysis. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981) (citing *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C.Cir.1975)). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773). The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

Defendants USMS, DEA, and FBI invoke Exemption 7(C) to protect third-parties in the custody of the USMS, third-parties of investigative interest to the agents, and the names of agents, other government employees, and local law enforcement personnel who participated in the investigation and prosecution of plaintiff.  *See* Bordley Decl., ¶¶ 12-14; Odegard Decl., ¶¶ 34-36; Steward Decl., ¶¶ 41-45.  The deletion of the names and identifying information of federal, state and local law enforcement personnel has been routinely upheld.  *See Lesar*, 636 F.2d at 487 (finding legitimate interest in preserving identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F.Supp. 1, 3 (D.D.C. 1995)(possibility of animosity toward FBI agents outweighed any possible benefit of disclosure), *aff'd in relevant part,* 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  In addition, the names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files have been consistently protected from disclosure.  *See Perrone v. FBI*, 908 F.Supp. 24, 26 (D.D.C. 1995) (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 779); *Baez v. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980); *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C. 1987).  For these reasons, the Court concludes that defendants USMS, DEA, and FBI have properly invoked Exemption 7(C) to protect the identities of these various categories of individuals.

**F.  Exemption 7(D)**

Exemption 7(D) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local, or foreign agency or authority or any
> private institution which furnished information on a confidential basis,
> and, in the case of a record or information compiled by a criminal law

> enforcement authority in the course of a criminal investigation . . .
> information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  To invoke Exemption 7(D), an agency must show either that a source

provided the information to the agency under express assurances of confidentiality or that the

circumstances support an inference of confidentiality.  *See U. S. Dep't of Justice v. Landano*, 508

U.S. 165, 179-81 (1993). When determining the latter, the proper inquiry is "whether the

particular source spoke with an understanding that the communication would remain

confidential." *Id*. at 172.  The government is not entitled to a presumption that all sources

supplying information in the course of a criminal investigation are confidential sources.  An

implied grant of confidentiality may be inferred, however, from the circumstances surrounding the

imparting of the information, including the nature of the criminal investigation and the

informant's relationship to the target.  *See id*; *see also Computer Professionals for Social

Responsibility*, 72 F.3d at  905-06.

    Defendants DEA and FBI assert this exemption to protect the identity of confidential

sources who had an express guarantee of confidentiality and those to whom a grant of

confidentiality should be implied under the circumstances of the investigation. *See* Odegard Decl.,

¶¶ 38-40; Steward Decl., ¶¶ 47-48.  DEA asserts that in the type of prosecution involved here -- --

drug trafficking -- it is reasonable to infer that the confidential source would fear reprisal.

Steward Decl., ¶ 38.  Violence and danger are inherent in drug trafficking activity.  *Mays v. DEA*,

234 F.3d 1324, 1329-30 (D.C. Cir. 2000).  Because of the nature of this crime, the Court can

reasonably infer that the informants cooperated under an implied assurance of confidentiality.  *See

Jones v. DEA*, 2005 WL 1902880 at *4 (D.D.C. July 13, 2005).   Therefore, the names of

confidential sources and the information they provided to law enforcement in this case were properly withheld under Exemption 7(D).

## G.  Exemption 7(E)

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §552(b)(7)(E).  Thus, for information to be properly withheld under this exemption, a court must find that (1) the information was compiled for law enforcement purposes; and (2) release of the information could reasonably be expected to circumvent the law.  *FBI v. Abramson*, 456 U.S. 615, 622 (1982); *Edmonds*, 272 F.Supp.2d at 56.

The FBI asserted Exemption 7(E) to protect documents about a specific law enforcement technique.  Steward Decl., ¶ 53.  Disclosure of this investigative technique, according to the FBI, could limit its future effectiveness.  *Id.*  In addition, disclosure would allow criminals to develop countermeasures against the technique.  *Id.*  The Court, therefore, concludes that the records were properly withheld under Exemption 7(E).

## H. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could  reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).  Under this exemption, the DEA seeks to withhold the identities of DEA agents. Odegard Decl., ¶ ¶  41-43.  The protection from disclosure under this exemption has been extended to the identities of federal agents.  *See Bennett v. DEA*, 55

F.Supp.2d 36, 41 (D.D.C. 1999); *Jiminez v. FBI*, 938 F.Supp. 21, 30-31 (D.D.C. 1996). Given the nature of the crimes they investigate and the undercover work they often undertake, the identities of DEA agents are exempt from disclosure under the circumstances presented here.

## I. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information still must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed the agencies' declarations, the Court concludes that those defendants that found records responsive to plaintiff's FOIA requests have withheld only the records or portions of records exempt under FOIA's provisions, and that all reasonably segregable material has been released. *See* Bordley Decl., ¶¶ 13-15; Odegard Decl., ¶¶ 62-63; Steward Decl., ¶ 56. With respect to these records, the agency declarations and attachments adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d at 827.

### Conclusion

For the reasons stated above, defendants' motions for summary judgment will be granted.

An appropriate order accompanies this Memorandum Opinion.


_____
JOHN D. BATES
United States District Judge


Dated:   November 9, 2005